UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERRENCE HENDERSON, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | Civil No. 3:03CV665(MRK) |
| | : | |
| THE TOWN OF GREENWICH, | : | |
| | : | |
| Defendant. | : | |

# RULING AND ORDER

Currently pending before the Court are Plaintiff's Motion for Summary Judgment [doc. # 61], Defendant's Cross-Motion for Summary Judgment [doc. # 63], and Plaintiff's Motion for Sanctions [doc. # 72]. This case arises out of the December 20, 2001 stop and arrest of Mr. Henderson and West Pyles Jr. by police officers for the Town of Greenwich ("Greenwich"). During the course of a search of Mr. Henderson's car, Greenwich police officers found two loaded weapons, which ultimately formed the basis for an indictment against Mr. Henderson in federal court for being a felon in possession of a firearm and for possession of a firearm with an altered serial number. *See United States v. Henderson*, 3:02cr29(SRU). In his federal criminal case, Mr. Henderson challenged the admissibility of the evidence found during the course of the search of his vehicle, and following a suppression hearing before United States District Judge Stefan R. Underhill, the judge suppressed the evidence, finding that the police stop of Mr. Henderson was an illegal *Terry* stop. *Id.* [doc. # 30]. As a consequence of the suppression ruling, the Government moved to dismiss the charges against Mr. Henderson, and they were dismissed. *Id.* [doc. # 34].

Thereafter, he brought this *pro se* lawsuit against the Town of Greenwich seeking damages

for the violation of his constitutional rights on December 20, 2001.[1] In response to his request, the Court appointed counsel to represent Mr. Henderson, but he later decided that he did not want to be represented by *pro bono* counsel and instead wished to proceed *pro se*. *See* Motion to Dismiss *Pro Bono* Counsel [docs. ## 29, 52]. Because Mr. Henderson has not produced sufficient evidence to enable a reasonable jury to conclude that any violation of his constitutional rights was the result of a custom, policy, or practice of the Town of Greenwich, the Court DENIES Plaintiff's Motion for Summary Judgment [doc. # 61] and GRANTS Defendant's Motion for Summary Judgment [doc. # 63].

I.

The following facts are drawn from the parties' submissions and the transcript of the suppression hearing. On December 20, 2001, the Greenwich Police Department received a phone call from a Greenwich business-owner, Mr. Sievers, regarding a car parked on Greenwich Avenue. Mr. Sievers and his girlfriend, Ms. Leitenberger, were suspicious of the car's occupants–Mr. Henderson and his friend, West Pyles Jr.– and believed from their appearance and behavior that they may have been planning to rob a jewelry store located behind where Mr. Henderson and Mr. Pyles were parked. *See* Plaintiff's Motion for Summary Judgment [doc. # 61] at 27. Mr. Sievers memorized Mr. Henderson's license plate number and called the police, because he thought that Mr. Henderson and Mr. Pyles, two African American males, were "up to no good." *Id.* Before the Greenwich Police arrived on the scene, Mr. Henderson and Mr. Pyles drove a few blocks away and re-parked the car. After stopping and learning from Mr. Sievers the direction in which Mr.

---

[1] Mr. Henderson originally brought this lawsuit against the Greenwich Police Department. *See, e.g.*, Amendment to Complaint [doc. # 41]. On September 28, 2005, the Court granted Mr. Henderson's motion seeking an Amendment to Complaint [doc. # 41] in order to add the Town of Greenwich to the lawsuit and to withdraw the claims against the Greenwich Police Department. *See* Order [doc. # 43].

Henderson's car had driven, Officer Michael Macchia of the Greenwich police pulled up behind Mr. Henderson's car and blocked it in. Four additional police cars pulled up within minutes. *See* Defendant's Local 56(a)1 Statement in Support of Defendant's Motion for Summary Judgment [doc. # 70-3] Ex. B, Memorandum in Support of Motion to Suppress Evidence at 4-5.[2]

There is some disagreement about specifically what happened during the course of the stop. Officer Macchia arrived first on the scene, the lights of his police car flashing. Officer Macchia exited the police car and approached the driver's side of Mr. Henderson's vehicle. He then asked Mr. Henderson for his driver's license and registration and asked Mr. Pyles for his driver's license. As he returned to the police car to run a standard background check on Messrs. Henderson and Pyles, Officer Macchia spoke with central dispatch, which had researched the registered owner of the vehicle Mr. Sievers had identified, that is, Mr. Henderson. Central dispatch informed Officer Macchia that Mr. Henderson had an extensive criminal record, including convictions for possession of weapons and armed robbery.

When Officer Macchia returned to Mr. Henderson's vehicle, he asked Mr. Henderson and Mr. Pyles what they were doing in the area. By this time, other Greenwich police officers had arrived, and Mr. Henderson's vehicle was surrounded by police cars. Mr. Henderson contended in his motion to suppress that he told Officer Macchia he had been looking at sneakers in a store on Greenwich Avenue. *See* Local 56(a)1 Statement [doc. # 70-3] Ex. B., Mem. in Support of Mot. to Suppress at 5. The police asserted that Mr. Henderson told Officer Macchia that he was there to pick up his mother, Grace, who worked in a nearby building, and that Officer Macchia went to confirm Mrs. Henderson's employment in the building, but learned that no one by that name worked in the

---

[2] Exhibit B to Defendant's Local 56(a)1 Statement contains no table of contents or unified page numbering scheme. Therefore, the Court will include the name of the document contained within that exhibit and any page numbers original to the included document.

building. *See, e.g.*, Local 56(a)1 Statement [doc. # 70-3] Ex. B, Government's Response to Defendant's Motion to Suppress at 3. On learning this, Mr. Henderson related to Officer Macchia that his mother might work in a different nearby building, and Officer Macchia's visit to that building yielded similar, negative results. *See, e.g.*, *id.*

There is some discontinuity in the suppression papers about which Greenwich officers did what during the course of the stop, and the parties disputed whether Mr. Henderson immediately acquiesced to police requests to inspect his trunk and vehicle. The parties further disputed whether the Greenwich police gave Mr. Henderson permission to go, but first required him to exit from his vehicle for the purpose of taking pictures of Mr. Henderson and Mr. Pyles, and the parties disagreed on whether a policeman physically entered Mr. Henderson's car and was conducting a search at the point when the police officer noticed the butt of a handgun on Mr. Henderson's front seat. What is not in dispute is that at some point, Mr. Henderson and Mr. Pyles exited the vehicle at the prompting of the police, that the police photographed them, that a police officer spotted the butt end of a handgun between the driver's seat and passenger seats, that the police then patted down and handcuffed Mr. Henderson and Mr. Pyles, and that the police then searched the front seat of the vehicle and uncovered an additional handgun with its serial number removed.

The Greenwich police then arrested both individuals, arresting Mr. Henderson for possessing a weapon in a motor vehicle, carrying a firearm without a permit, and altering the identification of a firearm. Mr. Pyles was ultimately released, but Mr. Henderson was indicted in federal court for being a felon in possession of a firearm and for possession of a firearm with an altered serial number. On July 12, 2002, Mr. Henderson moved to suppress the evidence seized as a result of the stop, on the basis that there was not sufficient suspicion to stop and search his car, and that using any such seized evidence against him would violate his rights under the 4th Amendment. *See* Local 56(a)1

Statement [doc. # 70-3] Ex. B, Defendant's Reply to Government's Response to Motion to Suppress.

After a hearing on the matter, Judge Underhill agreed and suppressed the evidence as a violation of the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968). *See* Local 56(a)1 Statement [doc. # 70-3] Ex. B, Transcript of September 90, 2002 Suppression Hearing at 47-64. In his ruling, Judge Underhill noted that there were no material disputes of fact and the only question was one of law. He did not fault the police for the manner in which they conducted the search once Mr. Henderson was stopped. As he put it: "I agree with you the officers were gentlemen. They were not overbearing, they were not intimidating Mr. Henderson in anyway. They properly went about the police work in every, in every way they could have, except they did it after an illegal stop." *Id.* at 62. Judge Underhill explained that he did not believe that Mr. Sievers' and Ms. Leitenberger's suspicions warranted the stop of Mr. Henderson and Mr. Pyles:

> This wasn't an officer walking up to a citizen and asking for an identification. This was a full stop, block the car, lights on. Three or four police vehicles with their lights flashing, five, six, seven, eight officers there at any one time. This is a major, a major investigation that's triggered by someone, a citizen with no history of reporting tips successfully who says I'm concerned that they are acting suspicious, after which they leave the scene where they are being suspicious and Office Macchia arrives. He testifies there is nothing about what he was able to observe prior to the stop that would have informed him in stopping them. He's relying completely on the tip, and yet the tip is simply a citizen's conclusion that somebody is acting suspiciously . . . . We have a citizen's suspicion or hunch that was accepted really without any independent evaluation by the police.

*Id.* at 61-63. Accordingly, the court granted the motion to suppress and the charges were later dismissed. This lawsuit followed.

II.

A.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is 'material' . . . if it 'might affect the outcome of the suit under the governing law.'" *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must draw all ambiguities and inferences in favor of Plaintiff, *see Anderson*, 477 U.S. at 255. Nonetheless, "a plaintiff must provide more than conclusory allegations . . . to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. When, as here, a court considers cross-motions for summary judgment, the court applies the same legal principles and "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004) (citations omitted).

   Before turning to the merits of these motions, the Court notes that Mr. Henderson failed to respond to the Defendant's Motion for Summary Judgment [doc. # 63], despite receiving a separate notice reciting the ramifications of a failure to respond. *See* Notice to Pro Se Litigant Opposing Summary Judgment [doc. # 69]. Mr. Henderson also failed to file a Local Rule 56(a)2 Statement in response to Defendant's Local Rule 56(a)1 Statement [doc. # 67]. Local Rule 56(a)2 states that

> The papers opposing a motion for summary judgment shall include a document entitled 'Local Rule 56(a)2 Statement,' which states in separately numbered paragraphs corresponding to the paragraphs contained in the moving party's Local Rule 56(a)1 Statement whether each of the facts asserted by the moving party is

> admitted or denied. The Local Rule 56(a)2 Statement must also include in a separate section entitled 'Disputed Issues of Material Fact' a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

In addition, Local Rule 56(a)3 states that

> Each statement of material fact . . . by an opponent in a Local Rule 56(a)2 Statement, and each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial . . . Counsel . . . are hereby notified that failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including . . . when the opponent fails to comply, an order granting the motion.

A copy of the local rules was included in the Notice [doc. # 69] sent to Mr. Henderson. *Pro se* plaintiffs are not excused from complying with the *Federal Rules of Civil Procedure*. *See Collins v. Experian Credit Reporting Serv.*, No. 3:04CV1905 (MRK), 2006 WL 2850411, at *1 (D. Conn. Oct. 3, 2006). That is particularly the case here, since the Court appointed skilled counsel to represent Mr. Henderson, but he dismissed *pro bono* counsel before the pending motions were filed.

The Defendant's Local Rule 56(a)1 Statement included the following statements of material fact: (1) that the officers involved in Mr. Henderson's stop were not policy makers for the Town of Greenwich, *see* Def.'s Local Rule 56(a)1 Statement [doc. # 70] ¶ 1; (2) that neither the Town nor the Police Department had a policy, custom or practice of race discrimination, *id.* ¶ 2; (3) that neither the Town nor the Greenwich Police Department had a policy of stopping people on the basis of race, *id.* ¶ 3; and (4) that at the time of the arrest, the Greenwich Police Department had an official and written policy prohibiting racial profiling in vehicular stops, *id.* ¶ 4. Because "all material facts set forth in [the movant's Rule 56(a)(1) Statement] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)(2)," D. Conn. L. Civ. R. 56(a)(1), the Defendant's factual assertions in its Rule 56(a)(1) Statement will be deemed admitted for the purposes of Defendant's motion for summary judgment.

*See S.E.C. v. Global Telecom Servs., L.L.C.*, 325 F. Supp. 2d 94 (D. Conn. 2004). However, even if the Court did not deem these factual assertions admitted on the basis of Mr. Henderson's failure to respond to them, the Court would nonetheless conclude that the record falls far short of demonstrating the minimum facts necessary for Mr. Henderson's suit to survive Defendant's motion for summary judgment, much less warrant a grant of summary judgment in favor of Mr. Henderson's claims.

B.

For purposes of this motion, the Court can assume (taking the facts in the light most favorable to Mr. Henderson) that, as Judge Underhill found in connection with the suppression motion, Mr. Henderson's constitutional rights were violated when he was stopped in December 2001. However, that single instance of unconstitutional conduct is insufficient to support Mr. Henderson's claims in this case. For Mr. Henderson has sued the Town of Greenwich, not the individual police officers. And to impose liability on a municipality under 42 U.S.C. § 1983 for the conduct of the police officers, Mr. Henderson must demonstrate that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers" or is conducted "pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978); *see also Myslow v. New Milford Sch. Dist.*, NO. 3:03cv496 (MRK), 2006 WL 473735, at *13 (D. Conn. Feb. 28, 2006). That is, "a municipality cannot be held liable solely because it employs a tortfeasor–or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Because Mr. Henderson has provided the Court with no facts that would enable a reasonable jury to conclude that he suffered constitutional injury as a result

of an official policy or custom of the Town of Greenwich, he cannot succeed or prevail on his claim against the Town. *See, e.g.*, *Green v. City of N.Y.*, 465 F.3d 65, 81 (2d Cir. 2006) ("A reasonable jury could not find that evidence of one instance in which emergency personnel were not familiar with the correct protocol constituted a practice so manifest as to imply the constructive acquiescence of senior policy-making officials.") (internal quotation marks omitted).

In his Motion for Summary Judgment [doc. # 61], Mr. Henderson makes the following allegation in support of the existence of an official policy or custom that violated his constitutional rights:

> The fact that all the officers from the Greenwich Police Department acted in concert during the illegal stop, setting of bail, and 10 months of prosecution without probable cause provides enough proof that the policy making officials of the municipality can be said to have actual knowledge of it. The officers were therefore operating under a shared set of rules and customs. My constitutional deprivations occurred as a direct consequence of The Town of Greenwich's unconstitutional municipal custom. The custom was the moving force behind and the cause of the violation in this case.

Plaintiff's Motion for Summary Judgment [doc. # 61] at 7.

As for Mr. Henderson's claims regarding the setting of bail, it is true that the police initially set bond in Mr. Henderson's case, but the Bail Commissioner and the State of Connecticut also recommended the setting of bond at $100,000 when Mr. Henderson was presented before Connecticut Superior Court Judge Bingham on the morning following his arrest. *See* Local 56(a)1 Statement [doc. # 70-3] Ex. B, Transcript of December 21, 2001 Bond Hearing at 1-2. And it was Judge Bingham, and not the Town of Greenwich, who ultimately set bond for Mr. Henderson at $100,000. *See id.* at 3. Moreover, Mr. Henderson was indicted by a federal grand jury and prosecuted by the United States Attorney's Office for the District of Connecticut, a federal entity that has no affiliation with the Town of Greenwich. *See, e.g.*, Local 56(a)1 Statement [doc. # 70-3] Ex. B, Transcript of September 9, 2002 Suppression Hearing in *United States v. Terence Henderson* at

1. Therefore, even if the setting of bail could bear on the issues in this case, the actions of these independent entities cannot be used as evidence of any custom or policy of the Town of Greenwich.

Furthermore, as noted previously, the conduct of the individual Greenwich police officers during the course of the stop and search of Mr. Henderson's car does not in and of itself provide sufficient evidence of any Town policy or custom to violate Mr. Henderson's constitutional rights. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 833 (1985) ("[T]he scope of § 1983 liability does not permit such liability to be imposed merely on evidence of the wrongful actions of a single city employee not authorized to make city policy.") (Brennan, J., concurring). To the contrary, the record contains only unrebutted evidence that the Greenwich police department had a written policy prohibiting racial profiling in vehicular stops in effect at the time of the incident here. *See* Local 56(a)1 Statement [doc. # 70-3] Ex. B, General Order No. 34 Motor Vehicle Stops and Racial Profiling at 52.1 ("No person shall be stopped, detained or searched when such action is solely motivated by considerations of race, color, ethnicity, age, gender or sexual orientation, and the action would constitute a violation of the civil rights of the person."). The uncontested record also shows that "[n]either the Town of Greenwich nor the Greenwich Police Department had a policy, custom or practice of unjustly singling out persons based on ethnicity or . . . race." Local 56(a)1 Statement [doc. 70-2] Ex. A, Affidavit of Pat Chila at 2 ¶ 10.

While a single incident of discrimination may well be sufficient to impose liability on a municipality if the incident was supervised or triggered by an individual with policy-making authority within the municipality, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), that is not this case. Municipal policy makers, for the purposes of imposing municipal liability, are "officials relatively high up in the municipal hierarchy." *Walker v. New York*, 974 F.2d 293, 297 (2d Cir. 1992). The unrebutted evidence in the record confirms that none of the police officers involved

in the stop and search of Mr. Henderson's car is a policy maker within the Town of Greenwich. *See* Def.'s Local 56(a)1 Statement [doc. # 70] ¶ 1; Local 56(a)1 Statement [doc. # 70-2] Ex. A, Affidavit of Pat Chila ¶ 8; Affidavit of Michael Macchia [doc. # 68] ¶ 4.

Mr. Henderson also alleges in his brief that the course of conduct over ten months *following* his stop "provides enough proof that the policy making officials of the municipality can be said to have actual knowledge of it." Pl.'s Mot. for Summ. J. [doc. # 61] at 7. "A § 1983 plaintiff injured by a police officer may establish the pertinent custom or policy by showing that the municipality, alerted to the [unconstitutional custom], exhibited deliberate indifference." *Vann v. City of N.Y.*, 72 F.3d 1040, 1049 (2d Cir. 1995). However, "[t]o prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious," and "[a]n obvious need may be demonstrated through proof of repeated complaints of civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents." *Id.* In short, "the alleged practice must be so manifest as to imply the constructive acquiescence of senior policy-making officials." *See Green v. City of N.Y.*, 465 F.3d at 80 (internal quotation marks omitted). Mr. Henderson has shown no evidence of a pre-December 2001 obvious need to supervise Greenwich police officers or of a pattern of abuse. The record is devoid of any incidents whatsoever involving the Greenwich police department beside the December 20, 2001 stop of Mr. Henderson. Therefore, Mr. Henderson has failed to show any "deliberate indifference" on the part of Greenwich, without which his argument of notice must fail.

The Court has no doubt that Mr. Henderson feels aggrieved by what happened to him on December 20, 2001. However, Mr. Henderson has not produced the evidence required to allow him to withstand the Town's summary judgment motion. In this regard, the Court notes that this lawsuit

was pending for nearly three years when Mr. Henderson filed his Motion for Summary Judgment [doc. # 61], and therefore, he had ample opportunity to conduct discovery and gather any evidence that might support his claim against the Town. Had he allowed *pro bono* counsel to represent him, Mr. Henderson might have sued the individual police officers instead of the Town or gathered the evidence needed to pursue the Town, but Mr. Henderson chose to dismiss his appointed counsel before counsel could provide Mr. Henderson much assistance.

III.

Mr. Henderson also moves for an award of $100,000 in attorneys' fees for Defendant's alleged violation of Rule 11(b). Mr. Henderson seems to argue that the Town's responses to his Rule 56(a)1 Statement were improper because (1) Judge Underhill's findings during the course of the federal case are binding upon the Town; and (2) the Town cannot deny any allegations on the basis of a lack of knowledge because the events mentioned in Mr. Henderson's statements were within the Town's actual knowledge. A reading of the Defendant's Local Rule 56(A)(2) Statement [doc. # 67] reveals that the only statement to which the Town alleged insufficient knowledge was a statement regarding Mr. Henderson's citizenship and residence. Because Mr. Henderson has not alleged any reason why the Town of Greenwich would have actual knowledge of his citizenship and residence as of March 16, 2006–the date of his pleading–Mr. Henderson's Motion for Sanctions is DENIED.

IV.

In sum, even taking the evidence and all inferences in favor of Mr. Henderson, the Court concludes that Mr. Henderson has produced insufficient evidence to permit a reasonable jury to conclude that the Town of Greenwich had a policy or custom, in furtherance of which the Greenwich police officers violated Mr. Henderson's constitutional rights. Therefore, Plaintiff's Motion for Summary Judgment [doc. # 61] and Motion for Sanctions [doc. # 72] are DENIED. Defendant's

Motion for Summary Judgment [doc. # 63] is GRANTED.  **The Clerk is directed to enter judgment for the Defendant and to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

Dated at New Haven, Connecticut: **December 22, 2006.**